IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

JUDSON WATKINS,

              Petitioner,

       vs.

FLOYD BENNETT,[1] Superintendent,
Elmira Correctional Facility,

           Respondent.

No. 9:06-cv-00895-JKS

MEMORANDUM DECISION

     Judson Watkins, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Watkins is currently in the custody of the New York Department of Corrections and Community Supervision, incarcerated at the Elmira Correctional Facility.  Respondent has answered.  Watkins has not replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

     In his first trial, Watkins was convicted by an Onondaga County Court jury of petit larceny (N.Y. Penal Law § 155.25), but the jury was unable to reach a verdict with respect to charges of Rape in the First Degree (N.Y. Penal Law § 130.35[3]) and endangering the welfare of a child (N.Y. Penal Law § 260.10[1]).[2]  Upon retrial before a different jury, Bennett was convicted of the rape and child endangerment charges.  In July 2002 the Onondaga County Court sentenced Watkins as a persistent felony offender to a prison term of twenty-five years to life.

---

    [1] Floyd Bennett, Superintendent, Elmira Correctional Facility, is substituted for Harold Graham, Superintendent, Auburn Correctional Facility.  Fed. R. Civ. P. 25(d).

    [2] Watkins was acquitted of charges of sexual abuse and criminal contempt.

The Appellate Division, Third Department, affirmed Watkins's convictions and sentence, and the

New York Court of Appeals denied leave to appeal on June 30, 2005.[3]  In February 2005, while

his appeal was pending, Watkins appearing *pro se* filed a motion to set aside his sentence under

N.Y. Criminal Procedure Law § 440.20 ("CPL § 440.20 motion") in the Onondaga County

Court.  The County Court denied the motion in a reasoned decision, and the Appellate Division

denied leave to appeal on July 31, 2006.  On August 25, 2006, Watkins filed a *pro se* motion to

set aside the judgment and vacate the sentence under N.Y. Criminal Procedure Law § 440.10

("CPL § 440.10 motion) and CPL § 440.20 in the Onondaga County Court.  The County Court

denied the motion on procedural grounds.  The Appellate Division affirmed, and the New York

Court of Appeals denied leave to appeal on February 23, 2011.[4]  Watkins timely filed his Petition

for relief in the Western District on June 26, 2006, which was transferred to this Court on

July 27, 2006.  Watkins filed his Amended Petition with leave of court on September 7, 2006.

Upon Watkins's motion, the proceeding was stayed from November 28, 2006, through August 9,

2011, to permit Watkins to exhaust his state-court remedies.

The facts underlying Watkins's conviction, as recited by Respondent:

**B.    The Trial**
**1.    The People's Case**
In May 2001, Zinella Davis lived at 113 Amherst Avenue in Syracuse, New
York with [Watkins], her boyfriend, and her four children, including JHW, who was
10 years old at the time (T: 278-79).  In mid-May, JHW was sleeping in her bed

---

[3] *People v. Watkins*, 793 N.Y.S.2d 657 (App. Dist. 2005) ("*Watkins I*") and 793 N.Y.S.2d
801 (App. Div. 2005 ) ("*Watkins II*"), *lv. denied*, 834 N.E.2d 1275 (N.Y. 2005) (Table).  In
*Watkins I* Watkins appealed from the convictions on retrial, and in *Watkins II* he appealed from
the petit larceny conviction in the first trial.

[4] *People v. Watkins*, 913 N.Y.S.2d 620 (App. Div. 2010), *lv. denied*, 944 N.E.2d 1157
(N.Y. 2011) ("*Watkins III*").

2

when she was awakened by [Watkins], who was naked (T: 221, 223-26).  [Watkins] climbed on top of JHW, pulled down her panties, and penetrated her vagina with the "private" part of his body between his legs.  "Yucky stuff" came out of [Watkins's] "private" part before he stopped (T: 227-29, 233).  JHW did not immediately tell her mother about what [Watkins] had done because she was scared (T: 230-31).  Davis ended her relationship with [Watkins] when she found him in JHW's bedroom (T: 288, 290).

On May 29, 2001, Davis brought JHW to the Emergency Room at University Hospital, where JHW told Dr. Lindsey Stastler, a pediatric resident, that [Watkins] had raped her (T: 280).  Dr. Stasler referred JHW to the hospital's care clinic headed by Dr. Ann Botash, director of the Child Abuse Referral and Evaluation Program, and an expert in the field of pediatrics and child sexual trauma, examined JHW (T: 255, 257-58, 261-62).  Using a colposcope—a large microscope attached to a videotape recorder—Dr. Botash made a videotape of JHW's genital area.  Dr. Botash compared the videotape to a videotape from a pelvic examination of JHW done in 1999, and found a change in JHW's hymen.  The hymeneal tissue was missing at the five o'clock and six o'clock position, which is the area that is most likely to be damaged during a sexual assault (T: 261-62, 265, 269).  Dr. Botash concluded that JHW sustained a penetrating trauma to her vagina that had healed (T: 270).

On May 29, 2001, Detective Fox interviewed JHW at the police station (T: 306-07).  Later that day, Police Officers David Mathewson and DeCaro located [Watkins] at 112 Redfield Place, in an attic crawl space (T: 320-21).

On June 6, 2001, while Davis was washing clothes at the laundromat, she found a pair of JHW's underwear, which was "very crusty and had a stain" on the crotch (T: 281-82, 285).  After speaking with JHW, Davis put the underwear in a plastic bag and gave it to the police (T: 282-83).  The underwear was submitted to the forensic center for analysis (T: 309).  On November 9, 2001, Detective Fox obtained a DNA sample from JHW, and on November 13, 2001, he obtained a DNA sample from [Watkins] (T: 309-11).

Kathleen Hum, a scientist at the Center for Forensic Science, performed a serological analysis of JHW's underwear and found semen on the inner crotch.  She cut out three small parts and submitted it for DNA testing (T: 336, 338).  Sheila Gentile, a senior DNA biology scientist at the Center for Forensic Scientist, who was accepted as an expert in DNA testing, found that her analysis of the semen from JHW's underwear did not exclude [Watkins] as the source of the semen.  She stated that the DNA profile found had a probability of being found randomly in 1 out of 248 trillion African Americans (T: 356-58, 361, 363).

**2.      [Watkins's] Case**

[Watkins], Sandra Soriano, and Tashia Godly-Hall testified on behalf of the defense.  Soriano, the mother of four of [Watkins's] children, testified that [Watkins] was at her home on May 29, 2001, when two police officers arrived looking for him (T: 378-79).  [Watkins] had come to her house about 30 minutes before the police got there (T: 381).  After a 15-minute search of her home, the officers arrested [Watkins] (T: 379).

According to Soriano, within three months of the trial, [Watkins] had written her letters asking for her help. In one letter, [Watkins] told her, "work with me on this one, not against me" (T: 384). One of the letters instructed Soriano to visit [Watkins] if she wanted money. In one letter, [Watkins] said he loved her and wanted to marry her (T: 385). When she received the letters she felt threatened because she was trying to end her relationship with [Watkins] (T: 385).

[Watkins] testified that he had been in a relationship with Zinetta Davis for about 1½ years (T: 389). [Watkins] testified that during his relationship with Davis, she would at times masturbate him, and then wipe him off with a towel or rag. He said that he did not see the items that Davis used to wipe him (T: 394-95). [Watkins] claimed that his relationship with Davis ended because he had gotten into a fight with Davis's brother. He denied that Davis broke up with him after seeing her [sic] in JHW's bedroom (T: 401-02). [Watkins] denied that he was in JHW's bedroom on May 29, 2001, and claimed not to remember testifying at his first trial that he was in JHW's bedroom (T: 402, 418-19).

He claimed that about three weeks before he was arrested on May 29, 2001, he and Davis stayed at the home of his cousin, Tashia Godly-Hall for about two weeks, while Davis's children stayed with their grandmother (T: 392-94).

Godly-Hall testified that she went out of town for six days beginning about May 20, 2001. She gave her house key to [Watkins], and twice spoke to him when she called her house while she was gone (T: 422-23).[5]

## II. GROUNDS RAISED/DEFENSES

In his Amended Petition, Watkins raises seventeen grounds: (1) the trial court admitted DNA evidence without first determining the reliability of the techniques used; (2) the trial court admitted evidence of the victim's underwear even though there were gaps in the chain of custody; (3) retrial on the rape and child endangering charges violated Watkins's double jeopardy rights; (4) the prosecutor failed to provide *Rosario*[6] material to the defense in a timely manner; (5) the trial court committed various evidentiary errors; (6) the verdict was not supported by legally sufficient evidence and was against the weight of the evidence; (7) the prosecutor

---

[5] Docket No. 62 at 8-11.

[6] *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961). A shorthand reference to the rules of mandatory discovery in criminal cases under federal and New York law.

4

committed misconduct by referring to evidence of the sexual abuse charges, of which Watkins had been acquitted in his first trial; (8) the trial court improperly denied a mistrial based on the prosecutor's misconduct; (9) the trial court abused its discretion in denying Watkins's request to appoint a defense DNA expert; (10) the trial court improperly denied a motion to dismiss the indictment on speedy trial grounds; (11) Watkins's sentence as a persistent felony offender violated his Sixth Amendment right to a jury trial and due process as set forth in *Apprendi*;[7] (12) cumulative error based upon the first eleven grounds; (13) retrial on the rape and child endangering charges violated the Double Jeopardy Clause; (14) the trial court improperly based its adjudication as a persistent felony offender on a prior felony conviction that was subsequently reversed on appeal; (15) Watkins was denied the effective assistance of trial counsel because his trial attorney failed to (a) investigate his competency to stand trial, (b) preserve the double jeopardy claim, and (c) preserve the challenge to his adjudication and sentence as a persistent felony offender; (16) he was denied the effective assistance of counsel in that counsel failed to (a) challenge the legality of his arrest, (b) request handwriting samples to challenge evidence that he had written letters to the victim, (c) investigate and present certain witnesses, (d) ensure his appearance before the grand jury, (e) preserve his claim that the trial court improperly admitted evidence of the victim's underwear, and (f) argue that the 90-day delay the People received for DNA testing was includable for purposes of the speedy trial claim; and (17) the trial court improperly denied Watkins of his right to counsel of his choice.[8]  Respondent contends that

---

[7] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[8] This contention was actually included as part of Watkins's ineffective assistance of counsel claim in his sixteenth ground.  Because it is based upon an entirely different factual basis
(continued...)

except for the double jeopardy (third and thirteenth grounds), insufficiency of the evidence (sixth ground), prosecutorial misconduct (seventh and eighth grounds), denial of the appointment of a DNA expert (ninth ground), improper use of a reversed conviction in sentencing (fourteenth ground), and denial of his counsel of choice (seventeenth ground), Watkins's claims are unexhausted and procedurally barred, or procedurally barred.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[9]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[10]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[11]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

---

[8](...continued)
and legal principles than an ineffective assistance of counsel claim, as did Respondent, this Court addresses it separately from the sixteenth ground.

[9] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[10] *Williams*, 529 U.S. at 412 (alteration added).

[11] *Early v. Packer*, 537 U.S. 3, 10 (2002).

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[12] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[13] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[14] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[15]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[16] Watkins "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[17]

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v.*

---

[12] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

[13] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[14] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[15] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[16] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[17] *Hawkings v. Castello*, 460 F.3d 238, 264 (2d Cir. 2006) (internal quotation marks and citations omitted).

*Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[18]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[19] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[20] Although pre-AEDPA precedent established that deference is due to the findings of state appellate courts,[21] the Second Circuit has left the question open with respect to AEDPA cases.[22] In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, i.e., findings of a state appellate court are presumed to be correct.

---

[18] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[19] *Cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . "); *Jones v. Stinson*, 229 F.3d 112, 118 (2d. Cir. 2000).

[20] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[21] *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[22] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

To the extent that Watkins raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.[23]  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[24]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[25]  This principle applied to federal habeas review of state convictions long before AEDPA.[26]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[27]  It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[28]  A determination of state law by a state intermediate appellate court is also

---

[23] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[24] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[25] *Bradshaw v. Richey*, 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[26] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law.").

[27] *See Bradshaw*, 546 U.S. at 76–78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[28] *Id.* at 76.

binding in a federal habeas action.[29]  This is especially true where the highest court in the state

has denied review of the lower court's decision.[30]

A petitioner may not transform a state-law issue into a federal one by simply asserting a

violation of due process.[31]  "[The Supreme Court has] long recognized that a mere error of state

law is not a denial of due process."[32]  "Federal courts hold no supervisory authority over state

judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[33]

The petition must specify all the grounds for relief available to the petitioner and the facts

supporting each ground.[34]  If it plainly appears on the face of the petition that the petitioner is not

entitled to relief, a district court must dismiss the petition.[35]  The district court may dismiss on

---

[29] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[30] *Id.*; *see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.").

[31] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[32] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (internal quotation marks and citations omitted).

[33] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[34] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2012).

[35] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 4 (2012).

this basis *sua sponte* after an initial screening and an answer has been ordered and filed.[36]  As the

Supreme Court has stated:

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts.  [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)).  Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:
>
>> "**CAUTION: You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge.  And you must state the facts that support each ground.  If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**"  Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).
>
> A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted."  § 2243.  Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading.  If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).[37]

Watkins has not replied to Respondent's answer.  28 U.S.C. § 2248 provides:

---

[36] *See Day v. McDonough*, 547 U.S. 198, 206-09 (2006) (the Court noted that, although the question remains open in the Supreme Court, the Courts of Appeals have unanimously held that, in appropriate circumstances, the court could raise defenses, e.g., procedural default, statute of limitations, exhaustion, and retroactivity, *sua sponte*); *see also Rosario v. United States*, 164 F.3d 729, 732-33 (2d Cir. 1998) (addressing procedural default *sua sponte* on appeal in the context of 28 U.S.C. § 2255).

[37] *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).

11

The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.

Ordinarily, under § 2248, where as in this case there is no denial of the Respondent's allegations in the answer, or the denial is merely formal and unsupported by an evidentiary basis, the court must accept Respondent's allegations.[38]  Where there is no traverse filed and no evidence offered to contradict the allegations of the return, they must be accepted as true.[39]

IV.  DISCUSSION

A.      **Exhaustion/Procedural Bar**

This Court may not consider claims that have not been fairly presented to the state courts.[40]  Unexhausted claims must be dismissed.[41]  To be exhausted, the claim must have been presented to the highest state court that may consider the issue presented.[42]  "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief."[43]  A mere appeal to a broad constitutional guarantee, e.g., due process, is insufficient to

---

[38] *See Carlson v. Landon*, 342 U.S. 524, 530 (1952).

[39] *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66 (2d Cir. 1952) (per curiam).

[40] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[41] *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005); *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

[42] *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[43] *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard v. Connor*, 404 U.S. 270 (1971)).

present the substance of a constitutional claim to the state courts.[44]  A petitioner satisfies the fair

presentation aspect of the exhaustion requirement by presenting the essential factual and legal

premises of his federal constitutional claim to the appropriate state courts.[45]  An issue is

exhausted when the substance of the federal claim is clearly raised and decided in the state court

proceedings, irrespective of the label used.[46]  Exhaustion does not require Watkins to have cited

the "book and verse on the federal constitution."[47]  A petitioner who does not cite the "book and

verse of the Constitution" may nonetheless "fairly present to the state courts the constitutional

nature of his claim" through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance
> on state cases employing constitutional analysis in like fact situations, (c) assertion
> of the claim in terms so particular as to call to mind a specific right protected by the
> Constitution, and (d) allegation of a pattern of facts that is well within the
> mainstream of constitutional litigation.[48]

This Court need not, however, rely on this basis as it may deny the petition on the merits

notwithstanding the lack of exhaustion of state-court remedies,[49] particularly where the ground

raised is plainly meritless.[50]  Even if a federal claim has not been properly presented to the

---

[44] *See id.* at 163; *Anderson v. Harless*, 459 U.S. 4, 7 (1982).

[45] *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009) (citing *Reese*, 541 U.S. at 30-34);
*Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

[46] *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

[47] *Picard v. Connor*, 404 U.S. 270, 278 (1971).

[48] *Daye v. Attorney General of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

[49] 28 U.S.C. § 2254(b)(2).

[50] *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

highest state court or preserved under state law, it will be deemed exhausted if it has become procedurally barred under state law.[51]

Under the adequate-and-independent-state-ground doctrine, federal courts may not review the judgment of a state court that "rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."[52]  Because this doctrine applies on federal habeas review, and because the state-law ground may be a procedural bar,[53] federal habeas courts often speak of an "adequate and independent procedural bar" to federal review of a claim or simply of a "procedurally barred" federal claim.  A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment "rests on a state law ground that is independent of the federal question and adequate to support the judgment."[54]  Where a decision "fairly appear[s] to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state-law ground is not clear from the face of the opinion," habeas courts presume that there is no adequate and independent state-law ground supporting the judgment.[55]  This rule even applies where the state court has ruled on the merits in the alternative.[56]

In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim "only

---

[51] *See Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201-02 (2d Cir. 2010).

[52] *Harris v. Reed,* 489 U.S. 255, 260 (1989).

[53] *Id.* at 261-62.

[54] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[55] *Id.* at 735.

[56] *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."[57]

Although the ultimate burden of proving adequacy of an affirmative defense is on the Respondent,[58] once Respondent has adequately pled an affirmative defense, the burden to place that defense in issue shifts to the petitioner.[59]   The petitioner may satisfy this burden "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."[60]

     1.    *Evidentiary Matters*

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[61]   "The introduction of unfairly prejudicial evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[62] "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[63]   In criminal actions, "[t]he States are free to provide

---

[57] *St. Helens v. Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

[58] *See Cotto v. Herbert*, 331 F.3d 217, 238 n.9 (2d Cir. 2003) (citing  *Bennett v. Mueller*, 296 F.3d 752, 761-63 (9th Cir. 2003)*, amended and superceded by* 322 F.3d 573 (2003); *Hooks v. Ward*, 184 F.3d 1206, 1216-17 (10th Cir. 1999)) (assuming, without deciding that the state bears the burden of proving the procedural bar defense).

[59] *Bennett*, 322 F.3d at 586; *Hooks*, 184 F.3d at 1216-17.

[60] *Bennett*, 322 F.3d at 586.

[61] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[62] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998)*, overruled on other grounds by Perry v. New Hampshire*, 132 S. Ct. 716 (2012) (internal quotation marks and citation omitted).

[63] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Marshall v. Lonberger*, 459 U.S.
(continued...)

such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in Federal Constitution."[64]  The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.[65]

In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights.[66]  For example, the Supreme Court has barred the introduction of evidence in State criminal proceedings that violated the Fourth Amendment (search and seizure),[67] Fifth Amendment (confessions),[68] Sixth Amendment (Confrontation Clause),[69] and (right to counsel).[70] In deciding cases involving the Federal Rules of Evidence or federal evidentiary statutes, the Supreme Court is acting in its supervisory capacity over the lower federal courts.[71]  "Federal

---

[63](...continued)
422, 438 n.6 (1983)) (internal quotation marks omitted).

[64] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

[65] *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[66] *McGuire*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[67] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[68] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[69] *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*, 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[70] *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

[71] *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006).

courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[72]

The Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[73]  Thus to the extent that the state evidentiary rules commit the admission or exclusion of evidence to the discretion of the trial court, an adverse ruling by the state court does not present a question of constitutional dimension.

Ground 1:  Improper Admission of DNA Evidence

Watkins contends that the trial court improperly permitted the State's DNA expert to testify without first determining the reliability of such techniques.  Watkins presented this claim on direct appeal solely on state-law grounds.  The Appellate Division summarily rejected Watkins's arguments: "We reject [Watkins's] contention that the evidence concerning DNA testing was not reliable."[74]  Even if this Court were to reach this ground, Watkins would not prevail.  Under New York law, the admission of expert testimony is committed to the broad

---

[72] *Id.* (quoting *Smith v. Phillips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

[73] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law. § 2254(d)(1).")

[74] *Watkins I*, 793 N.Y.S.2d at 658 (citations to state-court cases omitted).

discretion of the trial court.[75]  The rule is the same in federal courts.[76]  Thus, having failed to

present a question of constitutional dimension in any event,[77] Watkins is not entitled to relief

under his first ground.

Ground 2:  Admission of Evidence of Victim's Underpants

Watkins contends that because the evidence shows there was a three-week gap between

the time of the crime and the time the underpants allegedly worn by the victim were recovered,

the trial erred in allowing the introduction of any evidence associated with the underpants.

> [Watkins] failed to preserve for our review his contentions regarding the chain of
> custody with respect to the victim's underwear (*see* CPL 470.05 [2] ).  In any event,
> his contentions are without merit.  "'[T]he circumstances provide reasonable
> assurances of the identity and unchanged condition' of the evidence," and thus any
> deficiencies in the chain of custody affect only the weight of the evidence and not its
> admissibility.[78]

New York's contemporaneous objection rule to preserve appellate review, New York

Criminal Procedure Law § 470.05[2], is an adequate and independent state procedural rule

precluding review.[79]  Thus, Watkins is procedurally barred from bringing his second ground in

this Court.  Moreover, federal law with respect to breaks in the chain of the evidence is the same

---

[75] *See People v. Spicola*, 947 N.E.2d 620, 635 (N.Y. 2011); *DeLong v. County of Erie*,
457 N.E.2d 717, 722 (N.Y. 1983).

[76] *See United States v. Wexler*, 522 F.3d 194, 204 (9th Cir. 2008).

[77] *Lett*, 132 S. Ct. at 1862.

[78] *Watkins I*, 793 N.Y.S.2d at 658.

[79] *See Downs v. Lape*, 657 F.3d 97, 102-04 (2d Cir. 2011) (holding that New York's
contemporaneous objection rule to preserve appellate review, CPL § 470.05[2], is an adequate
and independent state procedural rule precluding review) (citing  *Whitley v. Ercole*, 642 F.3d
278, 286-87 (2d Cir. 2011); *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007); *Garvey v.
Duncan*, 485 F.3d 709, 718 (2d Cir. 2007); *Taylor v. Harris*, 640 F.2d 1, 2 (2d Cir. 1981) (per
curiam); *Garcia v. Lewis*, 188 F.3d 71, 78-79 (2d Cir. 1999)).

as in New York, i.e., it goes to the weight, not admissibility.[80]  Watkins is not entitled to relief under his second ground.

Ground 5:  Evidentiary Errors

In his fifth ground, Watkins alleges numerous evidentiary errors.  Specifically, Watkins argues that the trial court: (1) permitted the prosecutor to elicit hearsay statements made by the victim; (2) permitted a witness to testify that no trace evidence analysis was performed because Watkins and the victim lived in the same house, which unfairly bolstered the prosecutor's theory that Watkins had the opportunity to commit the crime against the victim; (3) permitted the prosecutor to impeach a defense witness using statements in Watkins's letters to her; (4) permitted the prosecutor to question Watkins and make references about the alleged sexual abuse incident for which Watkins had been acquitted in the first trial; (5) allowed the prosecutor to taunt him about how he would behave in similar circumstances; (6) permitted the prosecutor to question Watkins about whether he asked a defense witness about the possibility of a ten-year-old girl getting pregnant; and (7) improperly precluded cross-examination of a police officer about the victim's statements to the police.  The Appellate Division also summarily rejected petitioner's evidentiary claims: "We have considered [Watkins's] remaining contentions and find them to be without merit."[81]

Respondent contends that except for his fourth point (improper questioning about the alleged sexual abuse incidents of which he had been acquitted), Watkins presented his claims exclusively on state-law grounds.  Whatever may be the merits of the Respondent's exhaustion

---

[80] *See United States v. Jackson*, 345 F.3d 59, 65 (2003).

[81] *Watkins I*, 793 N.Y.S.2d at 659.

argument, it is irrelevant.  Not one of the claims Watkins has made falls within the narrow

categories of evidentiary rulings that the Supreme Court has held violated due process.  In short,

Watkins's fifth ground does not present any question of constitutional dimension.

2.      *Other Grounds*

Ground 4:  *Rosario* Violation

Watkins contends that the prosecution failed to timely turn over a videotape of an

examination by the medical expert of the victim in violation of its obligations under *Rosario*.

The Appellate Division rejected Watkins's arguments on direct appeal.

> Contrary to [Watkins's] further contention, reversal is not required based on
> an alleged *Rosario* violation.  Even assuming, arguendo, that the videotape at issue
> was *Rosario* material, we conclude that there is no basis for reversal on the ground
> of untimely disclosure inasmuch as defendant failed to demonstrate that he was
> substantially prejudiced by the delay in obtaining the videotape.[82]

Respondent contends that *Rosario* claims are state law claims, not founded on either the

Federal Constitution or federal laws, and are not cognizable in a federal habeas proceeding.  The

Court agrees.[83]  More importantly, however, is that, even if this Court considered his claim as

one brought under *Brady*,[84] Watkins would not prevail.  To constitute a *Brady* violation,  "[t]he

evidence at issue must be favorable to the accused, either because it is exculpatory, or because it

---

[82] *Watkins I*, 793 N.Y.S.2d at 659.

[83] *See Young v. McGinnis*, 411 F.Supp.2d 278, 329 (E.D.N.Y. 2006); *Jackson v. Lacy*, 74
F. Supp.2d 173, 180 (N.D.N.Y. 1999); *Stephens v. Costello*, 55 F. Supp.2d 163, 167 (W.D.N.Y.
1999); *Green v. Artuz*, 990 F.Supp. 267, 274-75 (S.D.N.Y. 1998); *United States ex rel. Butler v.
Schubin*, 376 F. Supp. 1241, 1247 (S.D.N.Y. 1974), *aff'd*, 508 F.2d 837 (Table) (2d Cir. 1975).
The Second Circuit has addressed the merits of compliance with *Rosario* solely in the context of
a claim of ineffective counsel for failure to raise a state law claim.  *See, e.g., Flories v. Demskie*,
215 F.3d 293, 300-305 (2d Cir. 2000); *Mayo v. Henderson*, 13 F.3d 528, 533-536 (2d Cir. 1994).

[84] *Brady v. Maryland*, 373 U.S. 83 (1962).

is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[85]  Even if the videotape were exculpatory or impeaching, Watkins has utterly failed to counter the finding of the Appellate Division that he suffered no prejudice as a result of the delay in being provided the videotape in question.[86]  In short, as to this ground, Watkins has also failed to establish entitlement to habeas relief by a preponderance of the evidence.  Watkins is not entitled to relief under his fourth ground.[87]

> Ground 10:  Denial of Speedy Trial

Watkins contends that the Onondaga County Court erred in denying his motion to dismiss the indictment on speedy trial grounds.  On direct appeal the Appellate Division disagreed:

> County Court properly denied [Watkins's] motion to dismiss the indictment on speedy trial grounds.  After the People stated their readiness for trial with respect to the trial at issue in appeal No. 2, they sought and obtained an adjournment for DNA testing.  The People's statement of readiness was not illusory because the People could have proceeded to trial without the DNA evidence, presenting the testimony of the victim and other witnesses (citations omitted).[88]

Respondent contends that because he only argued that his rights to a speedy trial under New York law,[89] Watkins has not properly exhausted this ground.  The Court agrees.  Moreover, even in his Petition before this Court, Watkins has not properly asserted a constitutional claim. In *Barker* the Supreme Court held that the Sixth Amendment unquestionably guarantees an

---

[85] *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

[86] This is particularly evident from the fact that in his Petition Watkins indicates he raised this issue in his first trial, and the videotape in question was relevant solely to the charges of which he was convicted in his retrial.

[87] *Hawkins*, 460 F.3d at 246.

[88] *Watkins I*, 793 N.Y.S.2d at 658.

[89] N.Y. Crim. Proc. Law § 30.30.

21

accused a "speedy trial."[90]  The *sine qua non* of a Sixth Amendment speedy trial violation is a showing of prejudice, i.e., that the defendant's ability to present a defense is prejudiced by the delay.[91]  The mere fact of delay, standing alone, does not necessarily establish prejudice.[92]  As the Supreme Court has explained, to trigger a speedy trial analysis under *Barker*, an accused must allege that interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay.[93]  That is, the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry.[94]  Watkins has made no such showing.  Thus, even if this Court were to disregard the failure to exhaust his state-court remedies, Watkins is not entitled to relief under his tenth ground.

Ground 11:  Sentence as a Persistent Felony Offender

Watkins contends that New York's persistent felony offender statute is unconstitutional under *Apprendi*.  On direct appeal, the Appellate Division held that this ground was not preserved for review and, in any event, lacked merit.[95]  Even if this Court disregards the procedural bar, Watkins is not entitled to relief on this ground. As interpreted by the New York Court of Appeals, "defendants are eligible for persistent felony offender status based *solely* on

---

[90] *Barker v. Wingo*, 407 U.S. 514, 515 (1972).

[91] *Reed v. Farley*, 512 U.S. 339, 353 (1994); *see Doggett v. United States*, 505 U.S. 647, 656 (1992).

[92] *Barker*, 407 U.S. at 521 ("[D]eprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself.").

[93] *Doggett*, 505 U.S. at 651-52.

[94] *Id.* at 652 n.1.

[95] *Watkins I*, 793 N.Y.S.2d at 659.

whether they had two prior felony convictions."[96]  *Apprendi* held that: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[97]  New York's persistent felony offender status clearly falls within the *Apprendi* exception of a prior conviction.[98]  Watkins is not entitled to relief under his eleventh ground.

<u>Grounds 15 and 16:  Ineffective Assistance of Counsel</u>

Watkins raised his ineffective assistance of counsel claims in his combined CPL § 440.10/440.20 motion in the Onondaga County Court.  On appeal from the denial of that motion, the Appellate Division, citing *inter alia* Criminal Procedure Law § 440.10[2], held:  "In denying the motion, County Court properly concluded that the contention of defendant that he was denied effective assistance of counsel could have been raised on his direct appeal from the judgment of conviction."[99]

Respondent contends that Watkins is procedurally barred from raising those claims in a federal habeas proceeding.  This Court agrees.  N. Y. Criminal Procedure Law § 440.10[2], a default procedural rule established by statute, is an independent and adequate state ground

---

[96] *People v. Rivera*, 833 N.E.2d 194, 198 (N.Y. 2005) (emphasis in the original).

[97] 530 U.S. at 490 (emphasis added); *see Almendarez-Torres v. United States*, 523 U.S. 224, 243-247 (1998) (recidivism is a sentencing factor, not an element of the crime that must be submitted to the jury).

[98] *Portalatin v. Graham*, 624 F.3d 69, 84-94 (2d Cir. 2010) (en banc).  Watkins's citation to *Ring v. Arizona*, 536 U.S. 584 (2002) is of no assistance.  *Ring* involved aggravating factors other than prior convictions and is inapposite.

[99] *Watkins III*, 913 N.Y.S.2d at 621 (citations omitted).

precluding review by this Court.[100]  Watkins is not entitled to relief under either his fifteenth or sixteenth grounds.

**B.      Merits**

Grounds 3 and 13:  Double Jeopardy

In the first trial, the jury convicted Watkins on the petit larceny charge, but was unable to reach a verdict with respect to the rape and endangering the welfare of a child charges, and the jury found Watkins not guilty of the remaining charges.  The trial court accepted the jury's guilty verdict on the petit larceny charge and acquittal of the charges other than the rape and child endangerment charges, and discharged the jury.  In his third ground Watkins contends that the introduction of additional evidence at his retrial violated the Double Jeopardy Clause.  In his thirteenth ground Watkins contends that, because the trial court accepted a partial verdict in the first trial, his retrial on the first degree rape charge violated the Double Jeopardy Clause.  On direct appeal the Appellate Division summarily rejected Watkins's arguments:  "Contrary to [Watkins's] further contention, there was no double jeopardy violation in appeal No. 1 with respect to the retrial of the unresolved charges (*see Matter of Wiley v. Couzens,* 38 N.Y.2d 731, 381 N.Y.S.2d 39, 343 N.E.2d 757)."[101]

The Double Jeopardy Clause of the Fifth Amendment provides:  "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  In essence, the Double Jeopardy Clause protects a criminal defendant against three things:  (1) "a second prosecution for the same offense after acquittal;" (2) "a second prosecution for the same offense

---

[100] *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

[101] *Watkins I*, 798 N.Y.S.2d at 658-59.

24

after conviction;" and (3) "multiple punishments for the same offense."[102]  Although a finding of insufficient evidence by the trial court or an appellate court on appeal is the equivalent of an acquittal, a discharge of a deadlocked jury is not an event that terminates the original jeopardy, and retrial is not prevented by the Double Jeopardy Clause.[103]  Here, there was no finding that the evidence introduced in the first trial was insufficient to support a conviction on the two counts upon which Watkins was retried, nor did the jury necessarily determine that Watkins was not guilty on those counts.  Therefore, the prosecution was free on retrial to introduce additional evidence in support of the counts.[104]  Watkins is not entitled to relief under his third or thirteenth grounds.

Ground 6:  Insufficiency of the Evidence

In his sixth ground Watkins contends that the verdict was both against the weight of the evidence and legally insufficient to support his conviction.  In support of his position Watkins points to inconsistencies in the testimony of the victim and testimony of defense witnesses that, if accepted, tended to exonerate Watkins, or points to alternative explanations or conclusions that could be reached on the evidence presented.  Watkins also refers to the evidence that he claims should have been excluded.  On direct appeal, the Appellate Division rejected Watkins's

---

[102] *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 803 (1989).

[103] *Richardson v. United States*, 468 U.S. 317, 326 (1984); *Burks v. States*, 437 U.S. 1, 16 (1978).

[104] *See United States v. Mespoulede*, 597 F.2d 329, 335-36 (2d Cir. 1979).

argument: "Also contrary to defendant's contention, the verdict is not against the weight of the evidence."[105]

Under New York law, the Appellate Division employs two standards of review—legal sufficiency and weight of the evidence.[106]  Although related, each requires a discrete analysis. Under the legal-sufficiency standard, the Appellate Division must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[107]  Under the weight-of-the-evidence standard, the court must examine the evidence further.  If, based upon all the credible evidence, a different finding would not have been unreasonable, the Appellate Division must, giving deference to the jury on credibility, weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.[108]  In determining the weight of the evidence, the Appellate Division determines credibility issues; it must assess the evidence in light of the elements of the crime as charged to the jury.[109]  That is, the Appellate Division "must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of

---

[105] *Watkins I*, 793 N.Y.S.2d at 659 (citing *People v. Bleakley*, 508 N.E.2d 672 (N.Y. 1987)).

[106] N.Y. Crim. Proc. Law § 470.15[4](b), [5].

[107] *People v. Santi*, 818 N.E.2d 1146, 1153 (N.Y. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[108] *Bleakley*, 508 N.E.2d at 674-75.

[109] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

the crime beyond a reasonable doubt."[110]  A verdict that satisfies the legally sufficient test may nevertheless be against the weight of the evidence.[111]

A weight-of-the-evidence argument is a pure state-law claim grounded in the New York criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles.  Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review.   In making a "weight of the evidence" argument, Watkins has not asserted a federal claim; instead, he has raised an error of state law, for which habeas review is not available.[112]

Under *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[113]  This Court must, therefore, determine whether the Appellate Division unreasonably applied *Jackson*.[114]  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, drawn the inferences, or considered the evidence at trial.[115]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively

---

[110] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[111] *Id*.

[112] *Brown v. Gouverneur Corr. Facility*, 408 F. Supp. 2d 175, 183-84 (W.D.N.Y. 2006).

[113] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[114] A finding that the evidence supports the verdict under the weight of the evidence standard implicitly includes a finding that the evidence is legally sufficient.

[115] *Jackson*, 443 U.S. at 318-19.

appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[116]

Watkins misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  Unlike the Appellate Division applying the New York weight-of-the-evidence test, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain a conviction of the crime as prescribed by state law.[117]  Conflicts and inconsistencies in the evidence do not satisfy the *Jackson* test.[118]  In this case, the Appellate Division, a state court, found that there was sufficient evidence of each element of the crimes to support conviction under the more favorable to Watkins weight-of-the-evidence test.  Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.[119]  Watkins bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous;[120] a burden Watkins has failed to carry.  The record does not compel the conclusion that no rational trier of fact could have found proof of guilt, especially considering the double deference owed under *Jackson* and AEDPA.  Watkins is not entitled to relief under his sixth ground.

Ground 7:  Prosecutorial Misconduct; Ground 8:  Motion for Mistrial

---

[116] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[117] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

[118] *See McDaniel*, 130 S. Ct. at 673.

[119] *See Jackson*, 443 U.S. at 326.

[120] 28 U.S.C. § 2254(e)(1).

Prior to the start of the pretrial, the prosecutor stated: "What we didn't talk about was the endangering the welfare of a child. I want to make sure I understand the Court's ruling. My understanding of it is based on the People's case in chief, unless the door is opened, we are precluded from talking about sex abuse first or any incident. The endangering charge will consist of the same charge as the rape. That's the sexual contact for the endangering charge." The trial court acknowledged that was the court's understanding as well.[121] In his seventh ground Watkins contends that in bringing up the alleged sexual abuse incidents during *voir dire* of the jury and questioning witnesses, including his cross-examination of Watkins, the prosecutor committed prosecutorial misconduct. In his eighth ground Watkins contends that the trial court erred in denying his motion for a mistrial.[122] The Appellate Division also summarily rejected these claims: "We have considered [Watkins's] remaining contentions and find them to be without merit."[123]

Where Watkins's claims fail is that his claims are based upon an alleged violation of a court order, yet he acknowledges that in most, if not all, the incidents the witnesses were permitted to answer over the objection of defense counsel, i.e., the trial court overruled the objection to the question. In addition, the trial court denied the defense motion for a retrial on that basis:

> [DEFENSE COUNSEL]: I do renew my motions. Also make a motion for a retrial, because the question keeps being answered by the People with regard to my client going into of the room of [L] or [J] pn May 29th.

---

[121] Transcript, Second Trial, at 4-5.

[122] Although Watkins uses the term "mistrial" the record reflects it was a motion for retrial.

[123] *Watkins I*, 793 N.Y.S.2d at 659.

THE COURT:  Well, I think probably out to address that.  I had made a pretrial ruling that we would not get into the events of May the 28th , early morning hours of May 29th, based upon the fact that at least with respect to certain counts of the indictment that were previously tried which the defendant was convicted on.

However, having made that ruling, that does not give him the right to take that shield and turn it into a shield for perjury.  When he was asked about whether he had ever been in the room before and his answer was no, he'd never been in the room alone or never been in the bedroom with her, and [the Prosecutor] impeached him with prior testimony in which he had admitted in a prior trial that eh had been in the room on May 29th.

I think [the Prosecutor] did not go into the fact that there had been an allegation of sexual conduct with the victim in the room at that particular time.  And, in fact, I think skirted the parameters of that pretty effectively.  So your client was impeached with prior testimony based upon answers he gave and that's a situation in my judgment he brought upon himself.

And I think that Harris versus New York and its prodigy [sic] are pretty clear that a determination of the Court to suppress certain matters does not give the defendant a shield to commit perjury.  So I think it is proper in that regard and the motion for mistrial is denied.

[THE PROSECUTOR]:  Judge, I would also add for the record that [defense counsel] put that matter in issue when he was cross-examining Zinetta Davis on the People's case in chief.  Repeatedly put that matter in issue in which it allowed the People to respond to it, Your Honor.

THE COURT:  Any case, I don't think that there are any matters elicited in the course of that cross-examination that fall in pretrial determination that I made.  Charles [referring to defense counsel] renewed his motions.  You [addressing the Prosecutor] I assume renew you opposition?

[THE PROSECUTOR]:  I ask that -- the People are opposed to that motion for the same reasons as set forth on the record.  My position is that nothing that has come out of the defense's case has changed those issues.

THE COURT:  All right, I will deny the motion.  . . . .[124]

Watkins's arguments fail on two bases.  First, under New York law a retrial is at the

discretion of the trial judge,[125] which is not an appropriate basis for federal habeas relief.[126]

Second, Watkins's contention with respect to his seventh ground is in reality an argument that

---

[124] Transcript, Trial 2, at 429-31.  The Court has used [T] and [J] in place of the names of the minors to protect their identity.

[125] *People v. Ortiz*, 429 N.E.2d 794, 796 (N.Y. 1981).

[126] *Renico*, 132 S. Ct. at 1862.

the prosecution disobeyed a court order.  It is axiomatic in both state and federal courts that the question of the interpretation of the scope of a court order is left in the first instance to the court that entered the order.[127]  Here, the trial court found that the prosecution had not violated the court's order.  This is a factual finding that must be overcome by clear and convincing evidence,[128] a burden that Watkins has failed to shoulder.  Watkins is not entitled to relief under his seventh or eighth ground.

Ground 9:  Failure to Appoint DNA Expert

Watkins contends that the trial court abused its discretion in denying his request to appoint a DNA expert to review the analysis by the State's expert.  On direct appeal the Appellate Division also summarily denied this claim:  "We have considered [Watkins's] remaining contentions and find them to be without merit."[129]  Initially, this Court notes that under New York law "[t]he decision to appoint experts to assist a defendant is left to the sound discretion of the trial court."[130]  Consequently, Watkins's ninth ground fails to present a question of constitutional dimension cognizable in a federal habeas proceeding.[131]

On this ground Watkins also seems to shift his position.  As Respondent correctly points out, Watkins's argument is unsupported by the record, i.e., Watkins's request for a DNA expert was granted prior to his first trial.  Watkins now seems to take the position that, because the trial

---

[127] *See United States v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005); *Vanderlyn v. Daly*, 949 N.Y.S.2d 266, 268 n.2 (N.Y.A.D. 2012).

[128] 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.

[129] *Watkins I*, 793 N.Y.S.2d at 659.

[130] *Johnson v. Harris*, 682 F.2d 49, 50 (2d Cir. 1982).

[131] *Lett*, 130 S. Ct. at 1862.

court did not appoint an expert until March 2002 he did not have sufficient time to review the government's expert's report (given to the defense in February 2002).  As Respondent points out, the first trial ended in an acquittal on the sexual abuse charges and a hung jury on the rape and child endangering charges.  The second trial did not start until May, two months later.

No matter which of Watkins's two positions is considered, Watkins does not prevail.  His first position is belied by the record, and his "fall-back" position fails to demonstrate any possible prejudice.  Watkins is not entitled to relief under his ninth ground.

Ground 12:  Cumulative Error

Watkins contends that the cumulative effect of the errors raised in his first eleven grounds deprived him of a fair trial.  It is well established that the cumulative effect of trial court errors, even if they are harmless when considered singly, may amount to a violation of due process requiring reversal of a conviction.[132]  Where, as here, no error is found to have occurred, a cumulative error claim fails.[133]  Watkins is not entitled to relief under his twelfth ground.

Ground 14:  Adjudication as a Persistent Felony Offender Upon a Reversed Conviction

Watkins contends that the trial court impermissibly used a 1994 conviction that was reversed on appeal in determining that he was a persistent felony offender.  Watkins raised this claim in his combined CPL §§ 440.10/440.20 motion.  Although the Appellate Division held that this claim was barred under CPL § 440.10[2], Respondent concedes that this ruling was erroneous and does not bar Watkins from raising the claim in this Court.

---

[132] *See, e.g., Taylor v. Kentucky*, 436 U.S. 478, 487 n.15 (1978); *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973).

[133] *United States v. Youseh*, 327 F.3d 56, 161 (2d Cir. 2003).

In response, Respondent contends that the record reflects that the trial court specifically stated it was not using Watkins's reversed conviction.  Instead, the trial court used two prior violent felonies that had not been reversed.[134]  The record bears out Respondent's argument and Watkins has not refuted it.  As noted above in discussing the eleventh ground, under New York law any two prior violent felony convictions is sufficient to establish persistent felony offender status.[135]  Thus, even if the trial court had incorrectly included the reversed 1994 conviction, because it would not have affected the outcome, the error would be harmless.  Watkins is not entitled to relief under his fourteenth ground.

Ground 17:  Denial of Counsel of His Choice

Watkins argues that, although he informed the trial court that, because of a breakdown in communication with assigned counsel, he wished to relieve assigned counsel and either be given the opportunity to retain his own counsel or have new counsel appointed, the court failed to replace counsel.[136]  The problem this Court has is two-fold.  First, this claim is factually undeveloped.  As Respondent points out Watkins has not alleged an irreconcilable conflict or total breakdown in communications.[137]  Second, under both New York and Federal law, the substitution of appointed counsel is within the discretion of the trial judge.[138]  Because Watkins's

---

[134] N.Y. Crim. Proc. Law § 70.08.

[135] *Rivera*, 833 N.E.2d at 198 (N.Y. 2005).

[136] Respondent also concedes that this ground, which was presented as part of his ineffective assistance of counsel claim in the combined CPL §§ 440.10/440.20 motion, is not procedurally barred as CPL § 440.10[2] was improperly applied to this claim.

[137] *See McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981).

[138] *People v. Porto*, 942 N.E.2d 283, 287 (N.Y. 2010); *United States v. Hsu*, 669 F.3d 112, 122-23 (2d Cir. 2012).

claim is both factually unsupported and fails to present a question of constitutional dimension,[139] he is not entitled to relief under his seventeenth ground.

## V.  CONCLUSION AND ORDER

Watkins is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[140]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[141]

The Clerk of the Court is to enter judgment accordingly.

Dated:  September 26, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[139] *Lett*, 130 S. Ct. at 1862.

[140] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[141] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.1.